FILED

2010 Jun-01 PM 04:31
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MAXINE FURS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:09-cv-01524-RDP |
| | ) | |
| AUTO-OWNERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF MAXINE FURS, INC.'S REPLY TO DEFENDANT AUTO-OWNERS INSURANCE COMPANY'S RESPONSE TO PLAINTIFF MAXINE FURS INC.'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Maxine Furs, Inc. (hereinafter, "Plaintiff" or "Maxine Furs"), by and through its undersigned counsel of record, and, hereby submits this Reply to Defendant Auto-Owners Insurance Company's (hereinafter, "Defendant" or "Auto-Owners") Response to Maxine Furs' Motion for Summary Judgment. In support thereof, Maxine Furs states and shows as follows:

## ARGUMENT AT LAW

Maxine Furs hereby offers this Argument at Law in support of its Reply to Auto-Owners' Response to Maxine Furs' Motion for Summary Judgment.

1

## I. **AUTO-OWNERS CANNOT MEET ITS BURDEN UNDER PORTERFIELD.**

Auto-Owners bears the burden of proving the applicability of the absolute pollution-exclusion clause found in Maxine Furs' insurance policy with Auto-Owners (hereinafter, the "Policy") to Maxine Furs' claim (hereinafter, the "Claim") for damage it suffered (i.e., for the expenses it incurred in cleaning the 2,018 fur coats in its store) as a result of a food spice aroma (i.e., the aroma of curry) that drifted, wafted, or floated into its store from the Indian food restaurant next door. Haman, Inc. v. St. Paul Fire and Marine Ins. Co., 18 F. Supp. 2d 1306, 1308 (1998).

In order to overcome this burden, Auto-Owners must, consistent with language of the Policy and the test devised by the Supreme Court of Alabama in Porterfield v. Audubon Indem. Co., 856 So. 2d 789 (Ala. 2002), prove that (1) the damage suffered by Maxine Furs was caused by exposure to a "pollutant" as defined in the Policy, and that (2) exposure to the "pollutant" arose out the discharge, dispersal, seepage, migration, release, or escape of the "pollutant." See Porterfield, 856 So. 2d at 801. As a matter of law, Auto-Owners cannot prove either of these prongs of the test articulated in Porterfield. Therefore, Maxine Furs is entitled to summary judgment, and Auto-Owners must provide coverage for Maxine Furs' Claim.

2

## A.    <u>AUTO-OWNERS CANNOT PROVE THAT THE FOOD SPICE AROMA WAS A POLLUTANT.</u>

As a matter of law, Auto-Owners cannot prove that the food spice aroma was a "pollutant" because the aroma was neither (1) a solid, liquid, gas, or thermal, nor (2) an irritant or contaminant.

### 1.    <u>AN AROMA OR ODOR IS THE METHOD BY WHICH A HUMAN BEING PERCEIVES ANOTHER HAPPENING, BUT IS NOT A SOLID, LIQUID OR GAS, ITSELF.</u>

The food spice aroma was not a solid, liquid, gas, or thermal. "Odor" is defined as "a quality of something that stimulates the olfactory organ," MERRIAM-WEBSTER ONLINE DICTIONARY *Odor* (2010), and as "'(1) the property or quality of a thing that affects, stimulates or is perceived by the sense of smell; (2) a sensation, stimulation, or perception of the sense of smell.'" <u>Church and Dwight Co., Inc. v. S.C. Johnson & Son, Inc.</u>, 873 F. Supp. 893, 895 (1994) (quoting the THIRD EDITION OF THE AMERICAN HERITAGE DICTIONARY). In discussing the concept of the term "odor," the court in <u>Church and Dwight Co.</u> favorably quotes an expert who explained that "'odors are not substances; they are properties or perceptions.'" <u>Church and Dwight Co.</u>, 873 F. Supp at 895. The food spice aroma was not a solid, liquid, or gas, but rather was the human perception of the air as it drifted, wafted, or floated into Maxine Furs' store, thereby stimulating the olfactory organ, creating the physical perception of a smell. The air is not what caused Maxine Furs damage, but rather the human perception of the quality of the air.

## 2.    THE FOOD SPICE AROMA WAS NOT AN IRRITANT OR CONTAMINANT.

The food spice aroma—specifically, the aroma of curry—was not an irritant or contaminant because it is common and ubiquitous.  Auto-Owners claims that this is a "bare assertion, unsupported by law."  Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 4.  In fact, Maxine Furs has provided persuasive support for its assertion.  To begin, as pointed out by Maxine Furs, nearly one in five people on the planet Earth live in India.[1]  It does not stand to reason that one-fifth of the world's population frequently seasons its food with an irritant or contaminant.

In <u>Donaldson v. Urban Land Interests, Inc.</u>, 564 N.W. 2d 728 (Wis. 1997), the court held that carbon dioxide was not a "pollutant" (i.e., not an irritant or contaminant) as that term was used in the absolute pollution-exclusion clause at issue because carbon dioxide emanates from an "activit[y] as fundamental as human respiration."  <u>Donaldson</u>, 564 N.W. 2d at 732.  The court reasoned that:

> [t]he terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for there is virtually no substance or chemical in existence that would not irritate or damage some person or property.  Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results.

---

[1]  The 2008 population of India was 1,139,964,132, while the world population was 6,697,234,0412.    <u>See</u>    http://www.google.com/publicdata?ds=wb-wdi&met=sp_pop_totl&idim=country:IND&dl=en&hl=en&q=what+is+the+population+of+india#met=sp_pop_totl&idim=country:IND&tdim=true.

<u>Id.</u>   Like human respiration, cooking with a food spice such as curry is a "fundamental"—a common and ubiquitous—activity.   Therefore, the byproduct of this activity—the food spice aroma—was not an irritant or contaminant.   To determine otherwise would be just the kind of absurd result contemplated by the court in <u>Donaldson</u>.

Auto-Owners, citing <u>Federated Mut. Ins. Co. v. Abston Petroleum, Inc.</u>, 967 So. 2d 705 (Ala. 2007), claims that the food spice aroma, while not an irritant or contaminant when willingly ingested, became a contaminant when it interacted with the fur coats in Maxine Furs' store.   Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 4.   Again, this court should return to the harm caused in this case.   Here, an unpleasant aroma caused high-end merchandise to be unmerchantable without thorough cleaning.   This is <u>not</u> a case where harm was in any way threatened to a person or the environment.

In <u>Abston Petroleum, Inc.</u>, 967 So. 2d 705 (Ala. 2007), the court held that gasoline, while not a pollutant when properly used for the purposes for which it was intended, became a pollutant when it leaked into the soil from underground lines or tanks, causing the plaintiff's business to close.   <u>Abston Petroleum, Inc.</u>, 967 So. 2d at 713.   <u>Abston Petroleum, Inc.</u> is clearly distinguishable from the case at bar.   Gasoline is a dangerous substance with, nonetheless, a legitimate purpose. Therefore, in determining whether gasoline is a "pollutant," it is necessary to

consider the context in which the substance appears.  The aroma of the food spice curry, by contrast, may not reasonably be considered dangerous in any context. Therefore, the approach of reasonableness and common sense adopted by the court in Donaldson more closely fits the facts of the case at bar.  See Donaldson, 564 N.W. 2d at 732.

Auto-Owners chose the words "irritant" and "contaminant" to describe the kind of harm exempted from coverage under Maxine Furs' Policy.  Both of these words are strong adjectives connoting manifest harm (or, at least, the real potential for manifest harm) to persons and/or the environment.  Auto-Owners could have selected less potent adjectives, such as "unclean," "dirty," or "unmerchantable," to describe the kind of harm exempted from coverage under Maxine Furs' Policy. But it did not.  Auto-Owners simply cannot shoehorn "food spice aroma" within the meaning of the term "irritant" or the term "contaminant."[2]

### 3.   IN THE ALTERNATIVE, THE TERM "POLLUTANT" IS AMBIGUOUS.

While Maxine Furs maintains that the food spice aroma is not a pollutant because the aroma is neither (1) a solid, liquid, gas, or thermal, nor (2) an irritant or contaminant, Maxine Furs argues in the alternative that the term "pollutant" is

---

[2] Some courts have held that the absolute pollution-exclusion clause applies only to traditional industrial and environmental pollution.  See Porterfield, 856 So.2d at 794, 796-97 (citing courts that have found absolute pollution-exclusion clauses to refer only to industrial and environmental pollution).  However, the overarching scope of the clause does not have to be addressed by this Court in this case.  No court disagrees that for the clause to apply, there must be some type of actual or threatened material harm to a person or the environment.

ambiguous and, therefore, inapplicable to Maxine Furs' Claim. Language in an insurance policy that is ambiguous must be construed liberally in favor of the insured. Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996). A court must interpret exceptions to coverage as narrowly as possible to provide the maximum coverage available to the insured. Id.; Porterfield, 856 So. 2d at 799-800. A term found in an insurance Policy is ambiguous if a reasonably prudent person applying for insurance would have understood the term to be reasonably susceptible to two or more constructions, or would have harbored reasonable doubt or confusion as to the meaning of the term. Porterfield, 856 So. 2d at 799. Here, no reasonably prudent person applying for insurance would have understood the term "pollutant" to encompass food spice aromas.

Auto-Owners claims that courts have widely interpreted absolute pollution-exclusion clauses to be unambiguous. Defendant's Response to Plaintiff's Motion for Summary Judgment, pp. 8-9. But this is an oversimplification. More specifically, both of the two primary cases cited by Auto-Owners dealt with dangerous substances threatening or causing physical or tangible harm to persons or the environment. See Deni Assoc. of Florida, Inc. v. State Farm Fire & Cas. Ins., 711 So. 2d 1135, 1141 (Fla. 1998); Abston Petroleum, Inc., 967 So. 2d at 713.

In Deni Assoc. of Florida, Inc., the court held that there was no ambiguity as to whether the term "pollutant" in the absolute pollution-exclusion clause at issue

7

included ammonia, noting that "[t]he Federal Clean Air Act categorizes ammonia as an extremely hazardous substance, the release of which is known to have serious adverse effects to human health." Deni Assoc. of Florida, Inc. v. State Farm Fire & Cas. Ins., 711 So. 2d at 1141. In Abston Petroleum, Inc., the court held that there was no ambiguity as to whether the term "pollutant" in the absolute-exclusion clause at issue included gasoline. Abston Petroleum, Inc., 967 So. 2d at 713. See also Porterfield, 856 So. 2d at 805 (holding that there was no ambiguity as to whether the term "pollutant" in the absolute pollution-exclusion clause at issue included lead paint, and noting that both the Alabama state legislature and the U.S. Congress have recognized the hazardous nature of lead paint); Haman, Inc., 18 F. Supp. 2d at 1308-09 (holding that there was no ambiguity as to whether the term "pollutant" included methyl parathion, and noting that methyl parathion is a highly regulated chemical that can only be used in uninhabited open fields).

By contrast, the case at bar involves a harmless food additive. While there may be no ambiguity as to whether ammonia, gasoline, lead paint, or methyl parathion are "pollutants" when they threaten harm to persons and/or the environment, there is overwhelming ambiguity as to whether the term "pollutant" as found in the clause at issue includes the aroma perceived from a popular food spice. See Donaldson, 564 N.W. 2d at 732-33 (holding that there was ambiguity as

8

to whether the term "pollutant" in the absolute pollution-exclusion clause at issue included exhaled carbon dioxide).

      **B.**    **<u>AUTO-OWNERS CANNOT PROVE THAT THE FOOD SPICE AROMA WAS DISCHARGED, DISPERSED, OR RELEASED, OR THAT IT SEEPED, MIGRATED OR ESCAPED INTO MAXINE FURS' STORE.</u>**

As a matter of law, Auto-Owners cannot prove that the food spice aroma was discharged, dispersed, or released, or that it seeped, migrated, or escaped into Maxine Furs' store. Each of these six verbs was selected by Auto-Owners for over innumerable others verb choices available to Auto-Owners. Each of these six verbs is marked by a distinctively kinetic quality. As the Supreme Court of Alabama noted in <u>Porterfield</u>, each of the words "discharge," "dispersal," "release," and "escape" implies an "'active or clearly perceived physical event,'" and that the chipping or flaking of lead paint is not attributable to such an event, but rather to an involuntary effect. <u>Porterfield</u>, 856 So.2d at 805 (citation omitted).

Here, the food spice aroma did not come to be in Maxine Furs' store through an "'active or clearly perceived physical event,'" but rather through an involuntary event. The food spice aroma may be described as having drifted, wafted, or floated into Maxine Furs' store. Auto-Owners claims that "Maxine Furs cannot create coverage with a thesaurus." Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 12. Auto-Owners no doubt created the exemption to coverage at issue here by reference to a thesaurus. Maxine Furs is left with no

option but to employ antonyms that clearly distinguish what happened in the case at bar from what happens when a "pollutant" is discharged, dispersed or released, or when a "pollutant" seeps, migrates, or escapes.

## CONCLUSION

For the foregoing reasons, Plaintiff Maxine Furs respectfully requests that this Court deny Auto-Owners' Motion for Summary Judgment and grant Maxine Furs' Motion for Summary Judgment.

Respectfully submitted,

/s/ Hubert G. Taylor
Hubert G. Taylor
Attorney for Maxine Furs, Inc.

OF COUNSEL:
Leitman, Siegal, Payne & Campbell, P.C.
420 20th Street North, Suite 2000
Birmingham, Alabama 35203
(205) 251-5900 – Phone
(205) 986-5068 – Fax

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2010, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those listed below, and a copy of the foregoing was mailed to the following via U.S. Mail, first class, postage prepaid:

Warren Burke, Jr.
Klasing and Williamson, P.C.
1601 Providence Park
Birmingham, Alabama 35244

/s/ Hubert G. Taylor