IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MAXINE FURS, INC.,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.:  2:09-CV-1524-RDP |
| } | |
| **AUTO-OWNERS INSURANCE** } | |
| **COMPANY,** } | |
| } | |
| Defendant. } | |

### MEMORANDUM OPINION

This matter is before the court on the parties' respective motions for summary judgment. (Docs. # 11 and 12). The motions have been fully briefed and are ripe for decision. (Docs. # 11, 12, 13, 14 and 15). The sole issue before the court on the cross motions for summary judgment is whether the absolute pollution-exclusion in Plaintiff Maxine Furs' commercial general liability insurance policy issued by Auto-Owners applies to exclude coverage for its claim under the policy. (*See* (Docs. # 11, 12, 13, 14 and 15).

**I.     Facts**

The facts of this case are undisputed. (*See* Doc. # 14 at 1) ("Auto-Owners does not dispute Maxine Furs' Statement of Undisputed Facts as written."). The relevant facts as presented by Maxine Furs are as follows.

Plaintiff Maxine Furs is a business located at 3321 Lorna Road, Hoover, Alabama 35216. It is a retail business engaged in the practice of selling, storing, and repairing fur garments. (Docs. # 12-3, 12-4, and 12-5). Auto-Owners issued to Maxine Furs an insurance policy for the period of

July 18, 2007 to July 18, 2008, policy number 074617-38323086 (the "Policy"). (Docs. # 12-6 and 12-7).

Fur coats in the possession of Maxine Furs were damaged by a food spice aroma that wafted from a nearby Indian Restaurant into Maxine Furs' business premises. (Docs. # 12-3, 12-4, and 12-5). This smell entered Maxine Furs' business premises through the air ducts of the air conditioning unit of the retail shopping center used by Maxine Furs. (Doc. # 12-3). The air ducts of the air conditioning unit had holes in them and the food spice smell drifted into the Maxine Furs' business premises through these holes. (Doc. # 12-3).

Auto-Owners conducted its own investigation and set forth the above facts in its December 2, 2008 letter to Maxine Furs denying coverage. (Doc. # 12-3). On May 19, 2009, Auto-Owners provided Maxine Furs with a second letter further explaining its decision to deny coverage. In that letter, Auto-Owners relied upon an affidavit by Mr. Terry Busby. (Doc. # 12-3). Mr. Busby is engaged in the business of heating, ventilation and air conditioning service and repair as a certified HVAC repairperson. (Doc. # 12-5).

Mr. Busby was contacted by John Pechi of Maxine Furs regarding locating and determining the origin of the odor infusing his business, which appeared to originate from the exhaust from the business adjacent to his fur sales, repair and storage business. (Doc. # 12-5). This adjacent business was Indian Grill, an Indian food restaurant. Mr. Pechi told Mr. Busby that the odors were most noticeable and distinctly heavier when the Indian restaurant was open and operating. (Doc. # 12-5).

When Mr. Busby initially visited Maxine Furs, it was readily apparent that its building was affected – the odors and aromas from the cooking of spicy and aromatic foods being prepared and cooked at the next-door Indian restaurant permeated the fur garments being offered for sale by

Maxine Furs (as well as other garments being stored upon its business premises). (Doc. # 12-5). Mr. Busby visited Maxine Furs' business premises a second time and found the odors were still evident and aggravating, and were still causing damage to the furs. (Doc. # 12-5). Mr. Busby determined that there were several ways in which the aromas from the Indian restaurant could be entering Maxine Furs' business premises. (Doc. # 12-5).

In both coverage denial letters, Auto-Owners stated that the Indian food spice aroma was a "Pollutant" as defined in the Policy and therefore excluded from coverage. (Docs. # 12-3 and 12-4).

The policy issued by Auto-Owners to Maxine Furs contains the following relevant provisions:

> B. **Exclusions**
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. ...
>
>    f. Discharge dispersal, seepage, migration, release or escape of "pollutants" ... .

(Doc. # 11-5 at 25, 28). The policy defines "pollutants" as follows:

> 1. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Doc. # 11-5 at 24).

## II. Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the

moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial." Rule 56(e)(2). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

**III.    Discussion**

The pollution-exclusion clause in the Auto-Owners policy is customarily referred to as an "absolute pollution-exclusion clause." *See Federated Mut. Ins. Co. v. Abston Petroleum, Inc.,* 967 So.2d 705, 708 (Ala. 2007); *Porterfield v. Audubon Indemnity Co.*, 856 So.2d 789, 790 (Ala. 2002). Auto-Owners contends that the pollution-exclusion clause in the insurance policy issued to Maxine Furs is unambiguous and, therefore, that Auto-Owners is not obligated to indemnify Maxine Furs for the contamination of the furs by the curry odor. In response, Maxine Furs asserts that the

pollution-exclusion clause is ambiguous and, therefore, that the curry odor should not be considered a pollutant and that Auto-Owners should be responsible for the cost of cleaning the damaged furs.

In support of its arguments, Plaintiff contends that in *Porterfield* the Alabama Supreme Court addressed an identical absolute pollution exclusion clause to the one presently before the court. (Doc. # 12-1 at 9).  But that assertion does not hold water.  The clause at issue in *Porterfield* actually contained additional language regarding the source and/or location of the alleged pollutants.  That additional language is not present in the Auto-Owners policy and it is that language which distinguishes *Porterfield* from this case.  Indeed, the clause at issue here more closely resembles the language contained in the pollution-exclusion clause examined by the Alabama Supreme Court in *Abston Petroleum*.  *See* 967 So.2d at 709; Doc. # 11-5 at 24, 28.  In fact, the definition of the term "pollutants" in *Abston Petroleum* is identical to that in the Auto-Owners policy:

> any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Abston Petroleum, Inc.,* 967 So.2d at 709;  Doc. # 11-5 at 24.

The Alabama Supreme Court has held that the clause in *Abston Petroleum* was unambiguous. *Abston Petroleum, Inc.*, 967 So.2d at 713.  In *Abston Petroleum*, the crux of the court's rationale was that when properly used for the purposes for which it was intended, gasoline was not a pollutant; but when it leaked, it (along with its fumes) is properly viewed as a pollutant.  *Id.*

In an attempt to escape the application of the term "pollutant" in this case, Maxine Furs argues that the curry odor was not a gas, a solid, or a liquid.  This argument, however, is not just strained from a legal perspective, it ignores the laws of physics.  All matter exists in one of three fundamental states: "the solid, the liquid and the gaseous." *Amalgamated Sugar Co. v. U. S.,* 281

5

F.Supp. 373, 375 (Cust. Ct. 1968) (citing Webster's Third New International Dictionary 1966); *see also Kitchen v. Smith*, 334 P.2d 413, 417 (Kan. 1959) ("Matter exists in three states or phases: Solid, liquid and gas.") (citing Webster's New International Dictionary, Second Edition); *see also* Encyclopedia Britannica http://www.britannica.com/bps/search?query=states+of+matter.[1] Because all matter exists in either the solid, liquid or gas form, under Auto-Owners' pollution exclusion clause, it necessarily follows that literally anything – regardless of its substance or common use – could be deemed a pollutant under the policy.

Maxine Furs' argument that the clause should be read as being limited to those substances which are commonly known to be harmful is inconsistent with the unambiguous terms of the clause at issue. The mere fact that curry (in whatever of the three fundamental states of matter it existed when it migrated) is a common and natural product does not mean that it cannot also be considered a "pollutant" within the meaning of an insurance policy. *United States Fire Ins. Co. v. Ace Baking Co.*, 476 N.W.2d 280 (Wis. Ct. App. 1991); *see also Donaldson v. Urban Land Interests, Inc.*, 564 N.W.2d 728, 734 (Wis. 1997) (J. Steinmetz, dissent).

The *Ace Baking* case, cited by Judge Steinmetz, is not only instructive, but also is the most analogous of the cases which address these issues. Ace Baking made ice cream cones which it stored in a warehouse in which another company stored fabric softener. *Baking Co.*, 476 N.W.2d at 281. One of Ace Baking's customer's complained that the cones it had purchased smelled and tasted like

---

[1] To be sure, technically, plasma, an electronically conducting medium in which there are equal numbers of positively and negatively charged particles, is sometimes called the fourth state of matter. Encyclopedia Britannica http://www.britannica.com/EBchecked/topic/463509/plasma. However, this is likely something of which the drafters of Auto-Owners' pollution-exclusion clause either were not aware or did not contemplate. In any event, based upon the undisputed facts of this case, this fourth state of matter really is not at issue here.

soap. *Id.* It was eventually determined that a fragrance additive from the fabric softener, linalool, had affected Ace Baking's ice cream cones and rendered them unusable. *Id.* Ace Baking made a claim under its insurance policy which the insurer denied under a pollution-exclusion clause similar to the one at issue here. *Id.* Ace Baking argued that coverage existed because linalool should not be considered a pollutant as it is generally harmless when properly used in appropriate products. *Id.* The Wisconsin Court of Appeals held that the transfer of the odor from the fabric softener to the ice cream cones was properly a "release, discharge, or dispersal" of a "pollutant." *Id.,* at 283. The court reasoned that, "[a]lthough linalool is a valued ingredient for some uses, it fouled Ace Baking's products." *Id.* Applying this analysis, here, the court notes that while curry is a valued ingredient in certain foods, its odor contaminated Maxine Furs' furs. Thus, it is a "pollutant" in relation to the furs.[2] The court finds that *Ace Baking*, while not binding, is well-reasoned and consistent with Alabama law.

Maxine Furs also argues in the alternative that, even if the curry odor could be considered a pollutant, it did not reach the furs through discharge, dispersal, release or escape. But this argument is off the mark. Without question, the odor of curry somehow arrived onto Maxine Furs' premises from the Indian restaurant next door. It is undisputed that the curry odor drifted onto Maxine Furs' business premises through the holes in the air ducts of the air conditioning unit of the retail shopping center where both Maxine Furs and the Indian restaurant were located. (Doc. # 12-3). This drifting phenomenon fits squarely within the terms of the pollution-exclusion. The pollution-exclusion excludes coverage for the "discharge, dispersal, seepage, migration, release or

---

[2] Plaintiff also asserts that the curry odor is not an irritant or a contaminant, but that argument is also a non-starter. It is undisputed that the curry smell "damaged" the furs on Maxine Furs' premises.

escape of pollutants." (Doc. # 11-5 at 28). These terms require no affirmative action on the restaurant's part to pollute a neighboring business premises (as Maxine Furs appears to argue). Rather, the terms "dispersed" and "migrated" address the way in which the pollutant arrived, not its source. Here, there can be little question that the odor in some manner was released or escaped the restaurant and dispersed or migrated into the Maxine Furs' business premises through the holes in the air ducts. That occurrence falls squarely within the exclusion. (Doc. # 12-3).

Although the odor of curry is enjoyed by many in certain culinary contexts, here, it contaminated Maxine Furs' furs. Therefore, it is properly viewed as a "pollutant" as that term is defined under the unambiguous absolute pollution-exclusion in policy number 074617-38323086 issued by Auto-Owners to Maxine Furs. Thus, there is no insurance coverage for the damages caused by the odor to Maxine Furs' furs.

**IV.    Conclusion**

For the foregoing reasons, Defendant Auto-Owners Insurance Company's Motion for Summary Judgment (Doc. # 11) is due to be granted, and Plaintiff Maxine Furs, Inc.'s Motion for Summary Judgment (doc. # 12) is due to be denied.

The court will enter a separate order granting the motions.

**DONE** and **ORDERED** this ___2nd___ day of July, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE